John HORTON by Edward T. HORTON, his guardian ad litem, Plaintiffs,

v.

ORBETH, INC., d.b.a. C & C Boat Works, et al., defendants and third-party plaintiffs, Appellants,

v.

Timothy JOHNSON, third-party defendant, Respondent,

David Melchert, third-party defendant, Respondent.

No. C1–82–1159.

Supreme Court of Minnesota.

Jan. 13, 1984.

Quinlivan & Williams, Kevin A. Spellacy, Gerald L. Hasselbrink, St. Cloud, for appellants.

Rosenmeier & Anderson, Douglas P. Anderson, Little Falls, for respondent Timothy Johnson.

Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Richard L. Pemberton, H. Morrison Kershner, Fergus Falls, for respondent David Melchert.

COYNE, Justice.

On July 22, 1977, John Horton was injured in a boating accident. Horton's guardian ad litem brought an action on his behalf against appellants Orbeth, Inc., and Bradley Nelson, the owner and the operator, respectively, of the boat which struck Horton. Appellants instituted third-party proceedings against Horton's two companions, respondents Timothy Johnson and David Melchert, seeking indemnity or contribution.

The matter was tried to a jury, which determined by special verdict that Horton had sustained damages of $800,000 and apportioned causal negligence among the plaintiff, the defendants, and the third-party defendants in these percentages:

| | |
|---|---|
| John Horton | 10% |
| Bradley Nelson | 74% |
| Timothy Johnson | 8% |
| David Melchert | 8% |

On September 4, 1980, the trial court ordered the entry of judgment awarding Horton damages of $720,000 against appellants Orbeth, Inc., and Bradley Nelson (for whose negligence Orbeth, Inc., is vicariously liable) and entry of judgment in favor of third-party defendants Johnson and Melchert.

Subsequently, the main action was settled; the trial court approved the settlement in the amount of $600,000 on January 5, 1981. On September 2, 1981, the appellants moved for judgment against Johnson and Melchert on a theory of contribution among joint tortfeasors. That motion was denied, and judgment in favor of respondents Johnson and Melchert was finally entered on June 28, 1982.

On appeal from that judgment the appellants contend that they have paid more than their proportionate share of the plaintiff's damages and that, although the plaintiff had no viable claim against them, the respondents are co-tortfeasors from whom the appellants are entitled to exact contribution. We affirm.

■ At the time of the accident which gave rise to these proceedings, actions involving negligence were governed by Minn. Stat. § 604.01 (1976). The effect of the comparative negligence of the parties on the claimant's cause of action and on the apportionment of damages was set out at § 604.01, subd. 1:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award.[1]

The statute provides in plain language for proportionate contribution among those who are "jointly liable" to the plaintiff and who are "jointly and severally liable for the entire award." The statute makes no provision for contribution by one who is not jointly liable to the plaintiff. Here the jury found the plaintiff more negligent than ei-

---

1. The 1978 amendment of Minn.Stat. § 604.01, subd. 1, included contributory fault within its scope of application and provided that the claimant's fault should not bar recovery unless it were greater than the fault of the defendant. At the same time, the provision for apportionment of damages was placed in a separate section, Minn.Stat. § 604.02 (1982). The operative language relative to contributions by those jointly liable, contained in subdivision 1 of section 604.02, remains unchanged.

ther respondent. Accordingly, had the plaintiff asserted claims against Johnson and Melchert in the main action, they would have been adjudged not liable to the plaintiff. Minn.Stat. § 604.01 (1976). *See Marier v. Memorial Rescue Service, Inc.,* 296 Minn. 242, 246, 207 N.W.2d 706, 709 (1973). Since Nelson and Orbeth, Inc., are the only parties who are liable for the award, the statutory scheme of damage apportionment does not contemplate contribution by Johnson or Melchert. *See Jack Frost, Inc. v. Engineered Building Components Company, Inc.,* 304 N.W.2d 346 (Minn.1981) (where one defendant was more negligent than the plaintiff and another defendant was less negligent than the plaintiff, the more negligent defendant was liable for the entire amount of the plaintiff's damages reduced only by the proportion of causal negligence attributable to the plaintiff).

█ Nor does Minnesota's time-honored common law of contribution justify the claim of the appellants for contribution from parties who are not liable to the injured party. "The very essence of the action of contribution is 'common liability.' " *American Automobile Ins. Co. v. Molling,* 239 Minn. 74, 76, 57 N.W.2d 847, 849 (1953). "[I]t is joint *liability,* rather than joint or concurring *negligence,* which determines the right of contribution." *Spitzack v. Schumacher,* 308 Minn. 143, 148, 241 N.W.2d 641, 645, n. 2 (1976) (emphasis in original). Although contribution is an equitable doctrine, the doctrine requires only that "persons under a common burden share that burden equitably." *Id.* at 145, 241 N.W.2d at 643. In the present case the appellants and respondents are not under a common burden. The burden is that of the appellants alone. Even though the jury found the respondents negligent to some degree, neither was negligent to a degree sufficient to impose liability to the injured party. We have consistently refused to require a party to contribute to an award when the quality of his conduct did not

justify imposing liability to the injured party. *E.g., Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166 (Minn.1979) (defendant airplane manufacturer not entitled to contribution from defendant pilot whose conduct was found not negligent in a prior action); *Spitzack v. Schumacher,* 308 Minn. 143, 241 N.W.2d 641 (1976) (liquor vendor denied contribution from a driver found less negligent than the intoxicated decedent in prior action).

Of course, what constitutes "common liability" is not susceptible of a single precise definition. The concept, an element of the equitable remedy of contribution, is accorded some elasticity. Common liability does not depend solely on whether or not a plaintiff can enforce recovery against two or more defendants. We have held that certain technical defenses, defenses that do not go to the merits of the case, do not extinguish common liability even though they eliminate one defendant's direct obligation to compensate the plaintiff. *Jones v. Fisher,* 309 N.W.2d 726, 729 (Minn.1981). In such instances it is a factor *extrinsic* to the tort itself (*e.g.,* failure to provide statutory notice, covenant not to sue, personal immunity, or the running of the statute of limitations) by which liability is avoided. The acts or omissions of the excused defendant were otherwise sufficient to subject the defendant to liability. In the present case, however, the non-liability of respondents Johnson and Melchert is not the product of a technical defense—a jury has judged their conduct on the merits and found them less negligent than the plaintiff.[2] In a long line of cases we have uniformly declined to allow contribution where there has been a valid determination on the merits that common liability (however flexible its definition) could never have existed. *E.g., Spitzack v. Schumacher,* 308 Minn. 143, 147–48, 241 N.W.2d 641, 644 (1976).

*Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679 (1977), and its

---

**2.** Undoubtedly the jury had been instructed that the plaintiff was entitled to recover from another only if he were less negligent than the person from whom recovery was sought. Minn.R. Civ.P. 49.01(2).

progeny do not stand as authority for the proposition that common liability is no longer relevant to the availability of contribution. Lambertson was injured in an industrial accident. Lambertson was negligent, but in a lesser degree than either the manufacturer of the offending equipment (25%) or Lambertson's employer (60%). We permitted the manufacturer to recover "contribution" from the employer even though there was no common liability in *tort:* Under the exclusive remedy clause of the Workers' Compensation Act the employer enjoyed a personal immunity from tort liability to his employee. Since, however, the employer was liable for the no-fault benefits fixed by the Workers' Compensation Act, the manufacturer and the employer were each liable—albeit uncommonly—to Lambertson. In the sense, then, that both were liable to Lambertson, "common liability" did exist.

Moreover, while *Lambertson* speaks in terms of contribution, the real impact of the decision was the limitation of a negligent employer's right of subrogation. The Workers' Compensation Act, while imposing on an employer liability to his injured employee for the benefits prescribed by the Act—without regard to the employer's fault—also affords the employer a right to reimbursement from the proceeds of the employee's action against a third-party tortfeasor—again without regard to the employer's fault. Minn.Stat. § 176.061, subds. 5, 6 (1982). In *Lambertson* we ameliorated the manifest inequity of requiring a third-party tortfeasor not only to compensate the injured worker but also to indemnify the worker's more negligent employer, by requiring the employer to "contribute" to the award. We held that although contribution was to be proportional to the employer's negligence, it could not exceed the level of common liability. The employer was obligated to contribute only up to the amount of workers' compensation benefits payable even though the employer's fault-based share of the damages would have been greater. In short, contribution was merely a vehicle for offsetting a negligent employer's right of subrogation. *See also*

*Johnson v. Raske Building Systems Inc.,* 276 N.W.2d 79 (Minn.1979).

Nor did the recent extension of the *Lambertson* principle in *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149 (Minn.1982), alter the basic requirement of common liability. In *Hudson,* as in *Lambertson,* we permitted contribution proportional to the employer's negligence but limited to the amount of workers' compensation benefits payable. In *Hudson,* unlike *Lambertson,* the employee could not have recovered damages in a tort action against his employer pursuant to the applicable comparative negligence statute. Nevertheless, Hudson's employer and the third-party tortfeasors shared the same kind of "common liability" that Lambertson's employer and the equipment manufacturer shared; and the effect of the decision in *Hudson,* like that in *Lambertson,* was to deny a negligent employer a right of reimbursement with respect to his statutory liability to the extent of the employer's proportionate share of the fault. In the present case the respondents have no liability to the plaintiff either on the merits of the plaintiff's common law cause of action or by reason of any statutorily imposed obligation. No species of common liability exists between appellants and respondents on which contribution can be based.

The appellants justify their quest for contribution on the ground that it is "unfair" to require a party who was found 74% causally negligent to pay 90% of the damages sustained by the plaintiff. The respondents counter with the contention that it would be "unfair" to require a party to contribute to the payment of damages for which a jury has said he is not liable. Minn.Stat. § 604.01, subd. 1 (1982) provides (a) that the plaintiff cannot recover from one whose degree of fault is less than the plaintiff's, and (b) that the damages shall be reduced only in proportion to the plaintiff's fault. It would, perhaps, have been more consistent had the legislature decreed that the damages be reduced in proportion to the aggregate fault of the plaintiff and all less-at-fault parties, from whom the

plaintiff cannot recover, but that is not what the legislature did. Rather, it determined that any defendant who is liable shall be jointly and severally liable for the whole award (diminished only by the plaintiff's proportionate share of fault) and that those parties jointly liable shall each contribute in proportion to his fault. Minn. Stat. § 604.02, subd. 1 (1982). Thus, the legislature has created a modified comparative fault system which comprises liability and contribution.[3] We have previously declined to engraft a pure comparative fault liability exception to that statute. *Cambern v. Sioux Tools, Inc.*, 323 N.W.2d 795 (Minn.1982). We now decline to engraft a pure comparative fault contribution exception to the statutory system.

Affirmed.

SIMONETT, J., took no part in the consideration or decision of this case.

AMDAHL, Chief Justice (dissenting).

I respectfully dissent. The respondents rely upon the fact that although they were found to be negligent, through operation of the comparative fault statute, they were not liable to plaintiff. Respondents argue that this absence of liability to plaintiff shields them from appellants' contribution claim because it precludes appellants from demonstrating the element of common liability.

Minn.Stat. § 604.01 (1976) provides for contribution "to awards" by those "jointly liable" and the majority opinion is correct in stating that "the statute makes no provision for contribution by one who is not jointly liable to the plaintiff." Thus the statute is not relevant to our present inquiry except that it does provide one basis for common liability.

Perhaps the most difficult context in which the common liability requirement must be construed is that in which, as in the case at bar, one cotortfeasor has a defense to the injured party's action. The use of the phrase "common liability" to delineate the scope of the remedy of contribution in this context is unfortunate because the literal meaning of the phrase suggests that a tortfeasor is shielded from a cotortfeasor's claim to contribution whenever that tortfeasor has a defense which prevents the injured party from enforcing a recovery against him. Such a literal interpretation of the common liability requirement is overly formalistic and reflects an excessively restrictive view of the purposes of contribution.[1]

**3.** Although Maine has recently adopted pure comparative negligence with respect to contribution, *Otis Elevator Co. v. F.W. Cunningham & Sons*, 454 A.2d 335 (Me.1983), Maine's modified comparative negligence statute goes only to liability and the reduction of damages. Me.Rev. Stat.Ann. tit. 14 § 156 (1971). It does not address the question of contribution. Maine's comparative contribution is a creature of judicial decision. *See Packard v. Whitten*, 274 A.2d 169 (Me.1971).

**1.** Although a common obligation is central to a claim for contribution, it is inconsistent with the purposes of contribution to make determinations regarding the existence of this common liability solely on the basis of the plaintiff's ability to recover damages from a particular tortfeasor. This point was discussed by one commentator as follows:

> Apparently common liability has been conceived as being liability which is enforceable against each tortfeasor individually at some time after the tortious occurrence; but common legal liability is inadequate as one of the necessary conditions precedent to the recov-

ery of contribution in view of its basic rationale that "equity is equality." Instances are not uncommon when one of the tortfeasors has at the time of the tort a personal defense against the injured person which negates the possibility of personal legal liability and thus makes common liability a logical impossibility. If the purpose of contribution is to make the wrongdoers share in the financial burden of their wrong, then the primary element of contribution should be the participation of the wrongdoers in acts or omissions which are commonly considered tortious and which result in the injury of a third person. Since the element of common liability is usually present when contribution is sought, it is possible that the courts have inadvertently considered it as one of the necessary elements of contribution without realizing that it is an inadequate basis for achieving the basic aim of contribution.

Note, *Contribution and Indemnity Among Tortfeasors in Minnesota*, 37 Minn.L.Rev. 470, 472 (1953) (footnote omitted). *See also*, Note, *Contribution and Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation*

Contribution is an equitable remedy designed to permit a tortfeasor who has paid more than his fair share of a judgment to obtain reimbursement from those whose tortious conduct also contributed to the injury. *See, e.g., Spitzack v. Schumacher,* 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976). In applying the notions of fairness inherent in the remedy of contribution to specific cases, this court has repeatedly recognized that "[c]ontribution is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties [which] should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability." *Jones v. Fisher,* 309 N.W.2d 726, 730 n. 4 (Minn.1981), *quoting Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 128, 257 N.W.2d 679, 688 (1977). Accordingly, we have rejected a formalistic construction of the common liability requirement in a number of decisions which have permitted contribution in circumstances in which the party from whom contribution was sought was successful in asserting a defense to the plaintiff's claim.[2] In such circumstances we have examined the nature of the tortfeasor's defense to the main action and

applied the principle "that defenses that do not go to the merits of a case * * * do not extinguish common liability." *Jones v. Fisher,* 309 N.W.2d at 729. Rather than applying the common liability requirement by looking strictly at the plaintiff's ability to enforce recovery against a tortfeasor, this approach looks to the policies underlying the protected tortfeasor's defense and weighs them against the equities served by contribution.

An application of this balancing test to the case at bar entails a comparison of the policies underlying the defense available to respondents under the comparative negligence statute with the policies supporting the appellants' claim to contribution. The comparative negligence statute's provision that a plaintiff may not recover from a defendant whose negligence is less than that of the plaintiff is a modification of "pure" comparative negligence principles that essentially reduces the scope of, but does not eliminate, the bar of contributory negligence. There is apparently no important public policy which is furthered by the comparative fault statute's contributory negligence provision.[3] Unable to discern

*Concepts,* 5 Wm. Mitchell L.Rev. 109, 125–27 (1979).

**2.** *See, e.g., Hammerschmidt v. Moore,* 274 N.W.2d 79, 81–83 (Minn.1978) (contribution permitted despite cotortfeasor's defense of failure to provide statutory notice); *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 127–28, 257 N.W.2d 679, 688 (1977) (contribution permitted despite cotortfeasor's defense under the no-fault provision of the workers' compensation statute); *White v. Johnson,* 272 Minn. 363, 371, 137 N.W.2d 674, 680 (1965) (contribution permitted despite cotortfeasor's defense of plaintiff's failure to provide statutory notice), *overruled on other grounds, Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362, 368 n. 11 (Minn.1977); *Employers Mutual Casualty Co. v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.,* 235 Minn. 304, 310, 50 N.W.2d 689, 693 (1951) (contribution permitted despite cotortfeasor's defense of a covenant not to sue). *See also Nerenhausen v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 479 F.Supp. 750, 756 n. 3 (D.Minn.1979) (common liability requirement modified under Minnesota law where third-party defendant not liable to plaintiff due to plaintiff's mistake in pleading).

**3.** Because it is inconsistent with the favored principles of fault-based loss allocation which underlie the comparative fault system, the doctrine of contributory negligence has been widely criticized as inequitable. In this regard, the Supreme Court of California noted the following:

It is unnecessary for us to catalogue the enormous amount of critical comment that has been directed over the years against the "all-or-nothing" approach of the doctrine of contributory negligence. The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault. Against this have been raised several arguments in justification, but none have [sic] proved even remotely adequate to the task. The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness.

*Li. v. Yellow Cab Co.,* 13 Cal.3d 804, 810–11, 532 P.2d 1226, 1230–31, 119 Cal.Rptr. 858, 862–63 (1975) (footnotes omitted).

any apparent justification as a matter of policy, commentators have attributed the retention of a contributory negligence provision in "modified" comparative fault statutes to a legislative compromise in the course of replacing contributory negligence with a system of comparative negligence. *See, e.g.,* Prosser, *Comparative Negligence,* 51 Mich.L.Rev. 465, 484, 490, 494 (1953).

Balanced against the policies promoted by respondents' defense to plaintiff's claim in the main action are the policies supporting appellants' claim for contribution. Contribution is an equitable remedy designed to achieve a fair allocation of damages when one tortfeasor has paid a disproportionate share of an injured party's judgment. *See Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 128, 257 N.W.2d 679, 688 (1977). As is characteristic of equitable remedies, the policy promoted by contribution is the notion of fairness. In the context of the comparative negligence statute, this notion of fairness is expressed by the requirement that losses be allocated among tortfeasors according to the degree of each party's culpability.[4]

In the present case, respondents were not liable to plaintiff because they were each found to have been 2% less negligent than the plaintiff. As a result, although the jury found them to have been only 74% negligent, appellants paid 90% of plaintiff's damages. There can be no question that it was unfair to compel appellants to pay plaintiff an amount of money that is proportionately greater than the percentage of negligence ascribed to them by the jury. The issue, therefore, is whether the rationale underlying the defense available to respondents against plaintiff's claim is sufficiently compelling, when weighed against this unfairness, to shield respondents from appellants' contribution claim as well.

It is my view that the benefits to be gained from remedying the unfairness in these circumstances by permitting an award of contribution considerably outweigh any countervailing policy considerations. Respondents' contributory negligence defense works well to control damage allocations between plaintiff and a tortfeasor or between plaintiff and jointly liable tortfeasors but finds little support as a matter of policy to justify its extension to a third party context.[5] Accordingly, I would hold that a tortfeasor who is directly liable for a plaintiff's injury may obtain contribution from a cotortfeasor whose fault also caused the injury but who is not directly liable to the plaintiff because of the operation of the contributory negligence provision of the comparative fault statute.[6]

4. The principle of fault-based loss allocation is reflected in the contribution provision of the comparative fault statutes: "When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award." Minn.Stat. § 604.01, subd. 1 (1976) (current version at Minn.Stat. § 604.02, subd. 1 (1982)).

5. In this regard, I agree with the view of a recent commentator:

"[T]he plaintiff's contributory negligence should not bar contribution by the second tortfeasor against the first. Both defendants have negligently and jointly caused injury to the plaintiff. The first defendant's defense is based solely on the fact that the plaintiff has contributed in part to his own damage. There is no reason why that fortuity should insulate the first defendant from contributing to the second. Allowing recovery in contribution will not reward the plaintiff nor encourage his negligence; nor will it undercut any policy encouraging socially desirable activity by the protected defendant. Whatever purpose contributory negligence serves, its chief thrust is a comparison of responsibility for injury between a plaintiff and a defendant who is permitted to rely upon the defense. There is no reason to carry over that comparison to enhance the protected tortfeasor's position relative to the claiming tortfeasor."

Hertz, *The Tort Triangle: Contribution From Defendants Whom Plaintiffs Cannot Sue,* 32 Me. L.Rev. 83, 131–32 (1980) (footnote omitted).

6. This holding is consistent with that recently reached in *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149 (Minn.1982). *Hudson* involved a personal injury action brought by an injured worker and presented the issue of the apportionment of damages between a negligent employer who is liable to the employee for workers' compensation benefits and a negligent third party. The exclusive remedy provision of Minn. Stat. § 176.061, subd. 6 (1982), restricts the in-

It is suggested that an award of contribution in these circumstances would be "unfair" to respondents because they have successfully defended themselves at trial. The jury found, however, that respondents breached their duty of care and that that breach contributed to the causation of plaintiff's injuries. It cannot be argued that respondents succeeded by establishing that they were without fault or by proving that they otherwise conducted themselves in a socially desirable manner. Respondent's "success" in avoiding direct liability can primarily be attributed to the character of the plaintiff's own conduct. However, after the plaintiff has recovered under the comparative fault statute, the character of the plaintiff's conduct is no longer a relevant consideration in the determination of the equitable allocation of loss among causally negligent tortfeasors. This point was recently made by the Supreme Judicial Court of Maine in its adjudication of an appeal which raised the same issues as those presented in the case at bar:

> Since the rationale supporting modified comparative negligence concerns only plaintiff's [legal] disability and does not disavow a tort-feasor's fault, the policies underlying modified comparative negligence simply do not come into play once an injured party has been paid his judgment by a joint tort-feasor found more negligent than he was and, therefore, directly liable to him. At that point, considerations shift solely to concerns of what is fair between tort-feasors whose

negligence collectively caused injury to another. Although at first blush it may seem unfair to a tort-feasor to contribute a share of the damages proportionate to his causal fault when he is not directly liable to the injured party, we think it is more unfair for a tort-feasor to pay damages in excess of his proportionate share under the circumstances presented here. The equities clearly support allowing contribution in favor of a tort-feasor * * [who has paid damages in excess of the percentage of negligence ascribed to him by the jury], especially when it is realized that the purposes underlying the injured party's [legal] disability not only are not frustrated, but that the purposes have no application to considerations of what is just between joint tort-feasors. On the other hand, to not allow contribution would certainly frustrate the policy * * * that tort-feasors should in fairness be required to contribute a share of the total damages proportionate to their causal fault.

*Otis Elevator Co. v. F.W. Cunningham & Sons*, 454 A.2d 335, 339–40 (Me.1983) (citations omitted). Respondents' fault caused the injury of another, and I find no unfairness in requiring respondents to contribute to the cost of recompensing the plaintiff.

I would reverse the judgment that respondents are not liable to appellants for contribution. Generally, judicial decisions are applied retroactively. *See American Family Mutual Insurance Co. v. Ryan*,

---

jured worker from recovering damages from the employer in excess of workers' compensation benefits. In recognition of this limitation of an employer's liability under the workers' compensation statutes, we have held that a third-party tortfeasor can recover contribution from the employer in an action brought by the employee, but only in proportion to the employer's percentage of negligence and not in an amount which exceeds the amount of workers' compensation benefits payable to the employee. *See Johnson v. Raske Building Systems, Inc.*, 276 N.W.2d 79, 80–81 (Minn.1977). To protect the employer from double liability, the employee is required to reimburse the employer to the extent that workers' compensation benefits paid to the employee have also been paid to the third-party for contribution. *Id.*

In *Hudson* the percentage of negligence attributed to the employer was an amount which, under the comparative negligence statute then in force, would have shielded the employer from direct liability to the plaintiff. Therefore, the employer in *Hudson* defended against the third-party tortfeasor's contribution claim on the ground that, through the operation of the comparative fault statute, the tortfeasors shared no common liability. We rejected the employer's argument and permitted contribution, holding "that a third-party tortfeasor may recover contribution from a negligent employer * * * whether or not the employee, in a direct suit, would have been barred from recovery under the comparative-fault statute." *Hudson*, 326 N.W.2d at 158.

**120**

330 N.W.2d 113, 115 (Minn.1983). However, in consideration of the possibility of reliance upon the unavailability of contribution in these circumstances by litigants currently at trial in the courts of this state, I would direct that the decision should only be applicable to cases which come to trial, or which are re-tried, after the date of this opinion.

I would reverse.

YETKA, Justice. I join in the dissent of the Chief Justice.