GARY RICE, Plaintiff-Appellee, v. McDONALD'S CORPORATION, Defendant (Hughes Excavating, Defendant-Appellee; Landmark Structures, Inc., Defendant and Third-Party Plaintiff-Appellee; Arthur Ostmann General Contractor, Inc., Third-Party Defendant-Appellant).

Fifth District    No. 5—93—0020

Opinion filed December 29, 1994.

Stephen R. Green, of Mitchell & Armstrong, Ltd., of Marion, for appellant.

Randolph E. Schum, of Blunt & Schum, of Edwardsville, for appellee Gary Rice.

Paul D. Giamanco, of Paul D. Giamanco, P.C., of Mt. Vernon, for appellee Hughes Excavating.

Jerome E. McDonald, of Campbell, Black, Carnine & Hedin, P.C., of Mt. Vernon, for appellee Landmark Structures, Inc.

JUSTICE CHAPMAN delivered the opinion of the court:

This case presents three questions. First, how are the proceeds from a trial that involves contribution claims, a third-party action against plaintiff's employer, and the assertion of a workers' compensation lien to be distributed after *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023? Second, did the trial court properly use an *additur* to compensate plaintiff for medical expenses when the jury left that space blank on the itemized verdict form and the evidence of medical expenses was undisputed? Third, did the third-party defendant/employer waive any objection to the *additur*?

This case began when a wall fell on top of the plaintiff, Gary Rice. Rice sued defendants Hughes Excavating (Hughes), Landmark Structures, Inc. (Landmark), and McDonald's Corporation (McDonald's). Landmark filed a third-party contribution action against plaintiff's employer, Arthur Ostmann General Contractor, Inc. (Ostmann), which raised its workers' compensation payments to plaintiff as a limitation to any contribution it might be required to make.

The jury returned a verdict of $350,000 for plaintiff, but it awarded him nothing for the undisputed $28,571.64 in past medical expenses proved during the trial. The jury assessed the parties' relative fault as follows:

| Hughes | 10% |
|--------|-----|
| Landmark | 50% |
| McDonald's | 0% |
| Ostmann | 40%. |

The trial judge granted plaintiff's post-trial request for an *additur* of $28,571.64 and entered judgment for plaintiff in the amount of $378,571.64.

Defendants satisfied the judgment, and Landmark sought reimbursement from Ostmann. Plaintiff satisfied Ostmann's claim for reimbursement of its $167,599.81 workers' compensation lien, which was owed under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1992)), by paying Ostmann $120,590.83. The latter figure was calculated by subtracting $47,008.98 from $167,599.81. The $47,008.98 figure was comprised of $41,899.95 in attorney fees under section 5(b) and $5,109.03 in prorated costs under the same section. There is no dispute about any of the above figures or their payment.

The dispute in the allocation process is between the third-party plaintiff and the third-party defendant/employer, Ostmann. Ostmann contends that, under *Kotecki*, its responsibility is limited to the amount it has paid in workers' compensation benefits, and it calculates that amount to be $120,590.83, the amount it was reimbursed by plaintiff.

Third-party plaintiff contends that it is entitled to recover contribution up to the full amount of the benefits that Ostmann paid, $167,599.81. Although third-party plaintiff's claim is for less than the full amount of those benefits, it states that theoretically it could recover the entire amount of benefits paid, if its contribution claim was that high. We agree with third-party plaintiff.

The Joint Tortfeasor Contribution Act allows a third-party plaintiff to recover from a third-party defendant if the former has paid more than its prorated share based upon a determination of relative culpability.

"§ 2. Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." (740 ILCS 100/2 (West 1992).)

That third-party plaintiff has paid more than its prorated share is not disputed.

Ostmann bases its argument that it owes only $120,590.83 on both *Kotecki* and section 5(b):

> "(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph 9(a) of Section 8 of this Act.
>
> Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." (820 ILCS 305/5(b) (West 1992).)

Section 5(b) allows an employer to be reimbursed from any amounts its employee recovers from a third party such as Landmark. *Kotecki*, of course, limits the amount of contribution that the third-party plaintiff can claim from the employer to the amount of benefits the employer has paid, but it does not address the question of whether the limitation is the gross amount paid by the employer or the net amount reimbursed to the employer by the plaintiff after any fees and costs have been deducted. Section 5(b) also requires the employer to pay its employee's attorney a 25% fee and its prorated share of the costs incurred in recovery from the third party.

■ We conclude that the third-party plaintiff is entitled to recover the full amount of its judgment, limited only by the amount of the workers' compensation benefits paid by the employer. The employer is required to pay the statutory fee and its prorated share of costs and is not entitled to reduce its responsibility under the Joint Tortfeasor Contribution Act by those amounts.

We note that the statutes quoted earlier are of little help in resolving this problem. We do know, however, that the supreme court has relied upon Minnesota law in resolving "[t]he underlying controversy between workers' compensation and contribution" (*Kotecki*, 146 Ill. 2d at 162, 585 N.E.2d at 1027), as it adopted the Minnesota Supreme Court's rationale in deciding *Kotecki*. (See *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 257 N.W.2d 679.) With this background in mind and in the absence of any Illinois cases on this point, it seems appropriate to examine Minnesota law.

In 1979 the Minnesota Supreme Court offered a hint of its resolution of this question in *Johnson v. Raske Building Systems, Inc.* (Minn. 1979), 276 N.W.2d 79. The actual holding of *Johnson* was:

> "The correct procedure for apportionment, then, is this: The third-party tortfeasors, here Raske and Ferguson, should pay the entire verdict ($99,750) to the plaintiff. The employer should then contribute to the third-party tortfeasor an amount proportionate to its percentage of negligence, but not to exceed the amount of workers' compensation benefits payable to the employee ($41,000). The employee (here the plaintiff trustee) should then reimburse the employer pursuant to § 176.061, subd. 6(c). *In the present case this amount of reimbursement equals the amount of workers' compensation benefits paid ($41,000), with the result that no money will change hands.*" (Emphasis added.) (*Johnson*, 276 N.W.2d at 81.)

The court noted, however, that in future cases the amount of reimbursement would not equal the amount the employer had already paid because of a recent Minnesota statute that required the employer to share in the cost of the suit against the third-party tortfeasor. This sharing, which is apparently similar to the prorated cost provision of section 5(b), would obviously reduce the amount of the employer's reimbursement. Although *Johnson* did not decide the question, its *dictum* suggests that it would have allowed full recovery of the contribution judgment by the third-party plaintiff, up to the amount of the benefits paid by the employer, and that it would reduce the employer's reimbursement from the plaintiff by the amount of its prorated share of the costs.

The result foreshadowed by the *dictum* in *Johnson* was reached in *Kordosky v. Conway Fire & Safety, Inc.* (Minn. 1981), 304 N.W.2d 616, which allowed the third-party plaintiff to recover the amount of its contribution claim and reduced the amount of the employer's reimbursement by the statutory fees and prorated costs, precisely the result reached by the trial court in this case. The Minnesota Supreme Court rejected the result suggested by Professor Steenson in a law

review article (Steenson, *The Anatomy of Products Liability in Minnesota: The Principles of Loss Allocation*, 6 Wm. Mitchell L. Rev. 243 (1980)) and held:

> "If the court adopted Professor Steenson's solution, the contribution that the third party is able to obtain from the employer, already severely limited in many cases, will be further reduced. Moreover, since the reduction mandated by the 1976 amendment reflects attorneys fees expended by the employee to obtain the recovery from the third party, to pass this reduction on to the third party would be to require the third party to pay for the privilege of being sued. This is not consistent with the equitable principles that form the basis of the Lambertson holding." *Kordosky*, 304 N.W.2d at 621.

We conclude that the trial court's allocation was correct, and we affirm on this point.

■ Turning to the issue of the *additur* for medical expenses, we conclude that Ostmann has waived its position on this point. Ostmann contends that it objected to plaintiff's request for an *additur*, but the page in the record that it relies upon for that contention does not contain an objection to the *additur*. In fact, the very next page in the record, which is Ostmann's post-trial motion, states:

> "The verdict including assessment of damages was against the manifest weight of the evidence. The jury's determination that an amount of zero should be recovered for medical bills was inadequate and inappropriate and shows a lack of understanding of the issues presented to the jury for decision in this case."

Quite obviously, this position is contrary to the position now taken on appeal. We conclude that Ostmann has waived any alleged error in the trial court's use of an *additur* in this case.

Even if Ostmann had not waived its position, we would still affirm the trial court's use of the *additur*. There was no dispute about the plaintiff's medical expenses or their relation to the injury. Under the circumstances, the trial court properly used the *additur* to correct the jury's mistake.

In view of the foregoing, we affirm the judgment of the trial court.

Affirmed.

GOLDENHERSH and WELCH, JJ., concur.